UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE S.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-796-RBL-MLP

REPORT AND RECOMMENDATION

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by (1) failing to provide legally sufficient reasons for rejecting the opinions of Plaintiff's treating physicians Kenneth Ritter, M.D. and Adrienne Cygnar, M.D., and (2) substituting his own medical opinion for the opinion of the treating medical professionals. (Dkt. ## 11, 15.) As discussed below, the Court recommends that the Commissioner's final decision be AFFIRMED, and this case be DISMISSED with prejudice.

## II. BACKGROUND

Plaintiff was born in 1952, has a high school education, and has worked in the past as an office assistant/clerk and as a mental health tech/psychiatric aid for the Department of Social and

REPORT AND RECOMMENDATION - 1

Health Services ("DSHS"). AR at 42, 44, 62-63. Plaintiff was last gainfully employed in 2014, when she retired from DSHS. AR at 44.

On October 28, 2014, Plaintiff applied for DIB benefits, alleging disability as of October 1, 2014. AR at 43. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing. AR at 13. After the ALJ conducted a hearing on September 2, 2016, the ALJ issued a decision finding plaintiff not disabled because Plaintiff could perform her past relevant work as an office assistant/office clerk. AR at 10-30, 36-73.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since October 1, 2014.

Step two: Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine and frozen left shoulder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform a limited range of light work and is capable of lifting 10 pounds occasionally and less than that on a frequent basis. She is capable of standing and walking for a total of four hours and sitting for a total of six hours in an eight-hour day. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can engage in no climbing of ladders, ropes, or scaffolds. With the bilateral upper extremities, she can engage in no overhead reaching above the head, although she can reach above the shoulders on an occasional basis. She can also engage in only frequent handling and fingering and only frequent operation of hand controls with the bilateral upper extremities. Finally, the claimant should have no concentrated exposure to extremes of cold or hazards.

Step four: Plaintiff can perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 10-30.

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 5.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

A. <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

    *1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.

REPORT AND RECOMMENDATION - 4

1  *Bayliss,* 427 F.3d at 1216.

2  Opinions from non-examining medical sources are to be given less weight than treating
3  or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the
4  opinions from such sources and may not simply ignore them. In other words, an ALJ must
5  evaluate the opinion of a non-examining source and explain the weight given to it. Social
6  Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more
7  weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-
8  examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent
9  with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-
10  33.

11            *2.      Kenneth Ritter, M.D. and Adrienne Cygnar, M.D.*

12  Dr. Ritter was Plaintiff's primary care doctor in 2014 and 2015. AR at 315. Unfortunately,
13  Dr. Ritter's handwritten treatment notes from this period are largely illegible. AR at 308-11, 561-68,
14  715-21.[3] In May 2015, Dr. Ritter responded to a letter from Plaintiff's counsel asking him seven
15  mostly "yes" or "no" questions about Plaintiff's functioning. AR at 667-68. Specifically, Dr.
16  Ritter indicated that Plaintiff's back and neck problems would require her to recline one to two
17  hours during an eight-hour day, take unscheduled breaks in excess of regular breaks, miss three or
18  more days of work per month, and use her hands and arms only occasionally. AR at 668. However,
19  Dr. Ritter did not provide an explanation for any of his conclusions. For example, in response to a
20  question asking Dr. Ritter to "identify the clinically demonstrated impairments/diagnoses that could
21  reasonably be expected to produce the claimed symptoms," Dr. Ritter simply wrote, "yes." AR at

22  ───────────────
23  [3] A November 2015 MRI of plaintiff's cervical spine conducted at TRA Medical Imaging in Tacoma was included with Dr. Ritter's treatment notes. If Dr. Ritter's handwritten treatment notes discuss the MRI results, however, his comments are not legible. AR at 715-21.

REPORT AND RECOMMENDATION - 5

668. Thus, neither Dr. Ritter's illegible treatment notes, nor his answers to the questions posed in the May 2015 letter, identify the basis for his opinion regarding Plaintiff's functional limitations.

In 2016, Adrienne Cygnar, M.D., apparently replaced Dr. Ritter as plaintiff's primary care physician. AR at 763-75. In July 2016, she co-signed Dr. Ritter's May 2015 opinion without comment. AR at 795. Dr. Cygnar's treatment notes reflected Plaintiff's report that she was working "with the Seattle Pain Center for her chronic cervical pain – some paresthesia from this … She is taking oxycodone 15 mg QID [four times per day] – this has been helpful for the shoulder as well." AR at 766. Plaintiff also reported to Dr. Cygnar that she "retired a month ago from 6 years of office work, because her neck issues had finally made it too difficult and they were remodeling at her job." AR at 767.

Although Dr. Ritter and Dr. Cygnar are treating providers, the ALJ gave their opinion "little weight" because "the significant functional limitations they opined are largely inconsistent with the above-described record as a whole showing that the claimant has maintained largely intact strength and sensation in both her upper and lower extremities across the longitudinal period at issue and has often reported that her symptoms are helped through the use of medication." AR at 27. Thus, the ALJ explicitly incorporated by reference his lengthy earlier discussion of the medical evidence, in which he explained in detail how the objective medical findings did not support functional limitations greater than a limited range of light work. AR at 23-26. The ALJ also found that the doctors' opinion was inconsistent with Plaintiff's report that her symptoms were well managed by her pain medication regimen.

For example, in his discussion of the objective medical evidence, the ALJ stated that "it is acknowledged that [the] record shows that the claimant has a history of degeneration in both her lumbar and cervical spine and that she has undergone cervical spine fusion surgery at C4 to C6 . . . . The record likewise shows a lengthy history of pain management for neck and low back pain, as well

REPORT AND RECOMMENDATION - 6

as bilateral arm pain, weakness, and cramping that predates the alleged onset date." AR at 23. However, the ALJ found that "the medical evidence related to the period since the alleged onset date does not establish that the claimant's functioning has been so limited since that time as to preclude her ability to engage in even a limited range of light work." AR at 23. The ALJ pointed out that "in addition to the fact that the claimant has consistently endorsed the overall effectiveness of medication in treating her pain, objective findings do not support the degree of limitation that she has alleged." AR at 23.

Plaintiff argues that the ALJ erred by failing to provide any reason for rejecting the opinions of these two treating physicians, apart from "a general statement their opinions were not supported by the longitudinal record." (Dkt. # 11 at 3.) Contrary to these doctors' opinion that Plaintiff could only occasionally use her hands and arms to lift, forward reach, grip or handle objects, AR at 668, 795, the ALJ's RFC assessment found that Plaintiff could "engage in only frequent handling and finger and only frequent operation of hand controls with the bilateral upper extremities." AR at 21. Plaintiff contends that "the overwhelming evidence throughout the record shows severe and long-term spinal injury, and shows that the symptoms are slowly getting worse." (*Id*. at 4.) In support of this argument, Plaintiff includes a lengthy string citation of transcript pages. (*Id*.)

It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work by framing the argument and putting flesh on its bones through a discussion of the applicable law and facts. *See Independent Towers of Wash. v. Wash*., 350 F.3d 925, 929 (9th Cir. 2003). Plaintiff does not address the ALJ's reasoning and findings at all, and instead posits a competing interpretation of the record. As noted above, the ALJ agreed that Plaintiff had severe impairments. Plaintiff does not explain how any of the record evidence she cites supports her theory that her symptoms worsened to the point of being more limiting than the ALJ found, *i.e*., that Plaintiff cannot perform a limited range of light work. Without more, Plaintiff's conclusory

REPORT AND RECOMMENDATION - 7

assertion that the ALJ erred by failing to provide adequate reasons for rejecting these doctors' opinions is insufficient to establish harmful error. As neither the doctors' opinion or treatment notes reflect the basis for their assessed limitations, the ALJ did not err by affording their opinion little weight. An ALJ may reject a medical opinion that is unsupported by clinical findings and the record as a whole. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Moreover, even when there is more than one reasonable interpretation of the evidence, this court should not substitute its judgment for the ALJ's. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, the ALJ could reasonably conclude that clinical findings and Plaintiff's improvement with medications undermined Dr. Ritter's and Dr. Cygnar's opinion. For example, in September 2014, Plaintiff's treating doctor assessed her with a cervical strain without radiculopathy or neurological involvement, for which surgery was not necessary. AR at 23, 306. She was able to walk for 60 minutes per day at that time. AR at 304. Later that month, she reported that her pain relief was adequate on her current pain medications. AR at 23, 377. After a fall that worsened her pain, examination findings were still mostly normal, she was still able to walk, and her provider noted that her pain complaints were unchanged over time. AR at 24, 579, 581, 697, 702, 707, 712. Treatment notes indicated that she had "improved quality of life and functionality" on her current regimen, and she denied medication side effects. AR at 697, 707.

Despite reporting some arm weakness in May 2015, arm strength and sensation were normal on examination. AR at 24, 730. The specialist she consulted did not think there was sufficient spinal cord compression to warrant surgery, and arm strength was again normal. AR at 722, 724. Later examinations were grossly normal, and she was stable on medications. AR at 25, 84, 787-88, 792.

As the ALJ noted, Plaintiff's symptoms were reduced by her medication regimen to the point where she was able to be quite active. AR at 25-26, 776, 779, 784, 787. She reported walking and

REPORT AND RECOMMENDATION - 8

playing with her dog for exercise most days, and that she would soon be traveling to California. AR at 767. On numerous occasions in 2015 and 2016, she rated her activity level with medications as seven or eight out of ten, with ten being the highest level of activity. AR at 26, 776, 779, 784, 787. The ALJ could reasonably conclude that Plaintiff's reported activity level of seven or eight out of ten is inconsistent with the doctors' opinion that she would have to lie down a significant portion of the day, could use her arms less than one-third of the day, would need unscheduled breaks throughout the day, and would miss several days of work per month. Accordingly, the ALJ provided several specific and legitimate reasons, supported by substantial evidence, for affording the doctors' opinions little weight.

### B. The ALJ Did Not Err in Assessing Plaintiff's RFC

Plaintiff's final contention is that the ALJ erred in assessing Plaintiff's RFC by "substituting his or her own opinion for that of the medical providers" with respect to Plaintiff's upper extremity function. (Dkt. # 11 at 2.) However, the ALJ is not required to adopt any medical provider's opinion in its entirety but is charged with weighing the competing medical evidence of record. Because the Court has affirmed the findings of the ALJ as to Plaintiff's prior assignments of error, it must also conclude that there was no error in determining Plaintiff's RFC. Plaintiff has pointed to no credible evidence establishing the additional limitations that she believes should have been included in the RFC assessment. Accordingly, the ALJ did not err by omitting these additional limitations from the RFC in this case. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1164–65 (9th Cir. 2008) (holding that an ALJ's RFC assessment need not include impairments for which the medical records do not establish any work-related impairments).

REPORT AND RECOMMENDATION - 9

## V. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be AFFIRMED, and this case be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

DATED this 25th day of March, 2019.

_____
MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10